UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILSON DORSEY, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-9862** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION "B" (3)** |

REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his claim for disability insurance benefits ("DIB") under Tittle II of the Social Security Act. The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

**I.    BACKGROUND**

Plaintiff filed an application for DIB on August 11, 2010, alleging a disability since August 10, 2010. (Adm. Rec. at 187-90). On April 13, 2011, Administrative Law Judge ("ALJ") Glynn F. Voisin determined that plaintiff had the severe impairments of disorders of the back and hypertension. (*Id.* at 91). ALJ Voisin determined that plaintiff's severe impairments limited him to a residual functional capacity ("RFC") to perform sedentary work with certain exceptions, and that plaintiff had been under a disability since August 10, 2010. (*Id.* at 91, 93).

Plaintiff received ongoing medical treatment while he received DIB, but on June 11, 2017, defendant performed a continuing disability review and found that plaintiff had experienced medical improvement related to his ability to work. (*Id.* at 95-97). Defendant thus concluded that plaintiff was no longer disabled as of June 11, 2014. (*Id.*).

1

Plaintiff sought an administrative hearing before an ALJ, and ALJ Thomas G. Henderson held that hearing on August 9, 2016. (*Id.* at 30-57). On September 15, 2016, the ALJ issued a decision in which he concluded that as of June 11, 2014, plaintiff was no longer disabled. (*Id.* at 14-24). The ALJ issued his decision in light of the earlier, favorable ruling on April 13, 2011, which he termed the "comparison point decision" ("CPD"). (*Id.* at 16). In the August 2016 decision, the ALJ recognized that plaintiff had the severe impairments of lumbar disc disease and hypertension at the time of the earlier decision. (*Id.*). He concluded that plaintiff did not develop any additional impairments after the CPD and continued to have the same impairments as before, with the addition of left shoulder tendinitis. (*Id.*). The ALJ held that since June 11, 2014, plaintiff did not have an impairment or a combination of impairments that meets or medically equals a listed impairment under the regulations. (*Id.* at 21). Medical improvement, he thus concluded, occurred on June 11, 2014. (*Id.* at 18). The ALJ found that plaintiff retains the residual functional capacity ("RFC") to perform a range of medium light activity as defined in 20 C.F.R. § 404.1567(b) except with occasional postural restrictions on climbing ramps/stairs; climbing ladders/ropes/scaffolds; balancing; stooping; kneeling; crouching and crawling and occasional overhead reaching with the left arm. (*Id.* at 19). The ALJ concluded that plaintiff is not disabled and has no past relevant work but can perform the duties of a janitor/cleaner, usher, and security guard. (*Id.* at 32). The ALJ thus denied plaintiff DIB and upheld defendant's cessation decision. (*Id.* at 23-24).

Plaintiff asked the Appeals Council ("AC") to review the ALJ's conclusion that he is not disabled, and, on August 10, 2017, the Appeals Council denied plaintiff's request. (*Id.* at 1-6). Plaintiff then timely filed this civil action.

2

## II.     STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence.  *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991).   If the Commissioner's findings are supported by substantial evidence, this Court must affirm them.  *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002).    It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993).   A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision.  *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts.   *Carey,* 230 F.3d at

135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

### III.   ENTITLEMENT TO BENEFITS UNDER THE ACT

The Commissioner may terminate disability benefits if substantial evidence demonstrates that: (1) there has been any medical improvement in the individual's impairment(s), and (2) the individual is now able to engage in substantial gainful activity. 42 U.S.C. § 423(f)(1); *Griego v. Sullivan*, 940 F.2d 942, 943-44 (5th Cir. 1991). Medical improvement is a decrease in the medical severity of a claimant's impairment(s) which was present at the time of the most recent favorable medical decision that the claimant was disabled, *i.e.*, the CPD. 20 C.F.R. § 404.1594(b)(1). Medical improvement must be based on improvement in the symptoms, signs, or laboratory findings associated with an impairment. *Id.*

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but can not, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work

exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 238 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education,

and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make her disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id*.

## IV. ISSUES ON APPEAL

There are three issues on appeal:

(1) Whether the ALJ erred when he gave significant weight to the medical opinion of Nurse Scharmaine Lawson-Barker when he mistakenly attributed it to plaintiff's treating interventionist, Dr. Walter Ellis.

(2) Whether substantial evidence supports the ALJ's conclusion that plaintiff is not disabled under Listing 1.04A.

(3) Whether substantial evidence supports the ALJ's conclusion that plaintiff experienced medical improvement.

## V. ANALYSIS

**1. Whether the ALJ erred when he gave significant weight to the medical opinion of Nurse Scharmaine Lawson-Barker when he mistakenly attributed it to plaintiff's treating interventionist, Dr. Walter Ellis.**

In June and July 2016, plaintiff sought treatment for complaints of neurological back pain from Walter Ellis, M.D., and Scharmaine Lawson-Baker D.N.P., F.N.P., of Advanced Clinical Consultants ("ACC"). (Adm. Rec. at 588-96). On July 4, 2016, Lawson-Baker noted:

> [T]here is substantial and qualitative improvement in the quality of life, there is a significant increase in the ability to be effective socially and functionally in large

6

> measure to the pharmocologic component of this patient's overall treatment plan, and the pain has organically based etiology. . . . Refill of controlled medications justified by: Lack of aberrant behavior. Lack of significant side effects. Demonstrated organicity of pain. Unsuccessful experience with non controlled pain meds including nsai and acetaminophen. Efficacy of prescribed medications.

(*Id.* at 596) (original partly in all caps). The ALJ afforded this statement "significant weight," although he attributed it to Ellis and not Lawson-Baker. (Tr. 22). Plaintiff argues that the ALJ's attributing of this opinion to Ellis amounts to per se reversible error.

For the following reasons, plaintiff's argument fails. While the Court (and defendant) recognize that Lawson-Baker is not an acceptable medical source, the ALJ was entitled to consider her opinion as it related to plaintiff's ability to function. Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939 at *2 (August 9, 2006).[1] "In addition to evidence from 'acceptable medical sources,' we may use evidence from 'other sources' . . . to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." *Id.* Thus, though the ALJ attributed the source of the statement to Ellis, rather than Lawson-Baker, Lawson-Baker's statement was nevertheless probative evidence on the issue of plaintiff's ability to function at that time, and the ALJ was within his discretion as the administrative finder of fact to rely on this first-hand examination report without regard to whether it originated from a physician or a nurse. *Id.*

Plaintiff makes much of the fact the Lawson-Baker's diagnosis is written under the heading "PLAN" and not that of diagnosis, arguing that her statement is not a medical opinion but a future goal of treatment. But Lawson-Baker's opinion is written in the present tense, rather than the future tense, indicating that it is not a future goal, but rather a description of plaintiff's current medical

---

[1] The Court notes that this ruling was rescinded on March 27, 2017. However, the ruling and underlying regulations were in effect at the time of the ALJ's 2016 decision.

7

status. (Adm. Rec. at 596). Lawson-Baker also stated that she was currently prescribing medications based on a current "lack of aberrant behavior." (*Id.*). Lawson-Baker also stated in this opinion that the refill of plaintiff's controlled medications was based on his "[u]nsuccessful experience with non controlled pain meds including nsai and acetaminophen." (*Id.*). The "[u]nsuccessful" treatment with over-the-counter medications cannot be considered a future goal of treatment, as plaintiff contends. (*Id.*). This reading of Lawson-Baker's "Plan" is consistent with Dr. Robert Lesser's (who also worked at Advanced Clinical Consultants) June 17, 2015 "plan. . . Referral to: Interventional Pain management: Dr. Ellis," given plaintiff's "[l]ack of aberrant behavior" and the "[e]fficacy of [his] prescribed medications." (*Id.* at 509). The Court finds that Lawson-Baker's "Plan" was clearly written as a current statement of the effectiveness of plaintiff's treatment, not a future goal.

The ALJ's attribution of the source of the July 2016 treatment record amounts to no more than harmless error because the ALJ's determination was not solely based on this record, and other substantial evidence in the record supports his RFC finding. (*Id.* at 441, 443). "Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1363-64 (5th Cir. 1988) (stating that substantial evidence did not support the ALJ's conclusion that the plaintiff could perform light work, but the record showed he could perform sedentary work and was therefore still not disabled). The Court finds that remanding this administrative decision for correction of a typographic error would be an exercise in futility and would not change the outcome of the ALJ's conclusion and would therefore serve no useful purpose. *See Shinseki v. Sanders*, 556

8

U.S. 396, 407 (2009) (reversal of an administrative decision on account of error is not automatic, but requires a determination of prejudice).

The Court's review of the record reveals that the objective medical evidence supports the ALJ's RFC finding that plaintiff can perform light work with postural and overhead reaching limitations after his medical improvement. (Adm. Rec. at 19, 441, 443, 489, 508). Specifically, and contradicting plaintiff's administrative hearing testimony that he is unable to walk from the front of his house to the back without needing to stop and rest or sit for longer than fifteen minutes, Chantel Charpentier, N.P., observed no neurological issues, a normal gait upon examination, and a full range of motion in plaintiff's back and musculoskeletal system on July 30, 2014. (*Id.* at 46, 441). Similarly, Radha Vanukuri, M.D. observed no neurological issues, a full range of motion in plaintiff's extremities, and a normal gait on January 22, 2015. (*Id.* at 443). Wendy Do, M.D., also observed no neurological issues and a full range of motion in plaintiff's extremities at his September 23, 2015 appointment. (*Id.* at 488). The ALJ as factfinder has the sole responsibility for weighing the evidence, and it is within the ALJ's discretion to resolve issues of conflicting evidence. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991*); Jones v. Bowen*¸ 702 F.2d 616, 621 (5th Cir. 1983). That is not the province of this Court.

Plaintiff's self-reported symptoms to his physicians also support the ALJ's finding that he can perform light work with postural and overhead reaching limitations after he recovered from his July 2013 spinal fusion surgery. (Adm. Rec. at 19, 38, 45, 441, 508). For example, contrary to his administrative hearing testimony that he is unable to walk from the front of his house to the back without needing to stop and rest, on July 30, 2014, plaintiff reported working outside lately and having no muscle pain. (*Id.* at 45, 441). He also testified that he cleaned the house, folded

9

clothes, and washed dishes, activities inconsistent with the degree of impairment in his ability to move about as he claimed. (*Id.* at 38, 45). Also contrary to his hearing testimony that his back pain is "always there" and it keeps him "grouchy because [he] can't do a lot of stuff," on June 17, 2015, plaintiff reported to Ellis that receiving an injection improved the pain in his legs and back so much that he was swimming and looking for "light duty" work. (*Id.* at 44, 508). "Pain that can reasonably be controlled with medication or treatment is not disabling." *Johnson v. Bowen*, 894 F.2d 683, 686 (5th Cir.1990). Given that substantial evidence of record from multiple examining sources supports the ALJ's finding that plaintiff is able to perform a reduced range of light work after his medical improvement, the question of whether the ALJ's decision correctly identified the author of plaintiff's July 2016 ACC treatment record addresses an issue that amounts to no more than harmless error.

      **2.    Whether substantial evidence supports the ALJ's conclusion that plaintiff is not disabled under Listing 1.04A.**

At Step Two of the sequential analysis, the ALJ found that plaintiff does not have an impairment or a combination of impairments that meets or equals an Appendix 1 listed impairment for presumptive disability under the regulations. (Adm. Rec. at 16-18). In arriving at this conclusion, the ALJ explicitly found that plaintiff does not meet the requirements for Listing 1.04A, which addresses disorders of the spine. (*Id.* at 17-18). To meet Listing 1.04A, a claimant must present medical evidence documenting compromise of a nerve root or the spinal cord, in addition to evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, if there is involvement of the lower back (as there is here), positive sitting and supine straight-leg raising test. 20 C.F.R. Pt. 404, Subpt.

10

P, App. 1 § 1.04A. The criteria for the listings are "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). To meet a listing, plaintiff must meet all of the specified criteria. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

Plaintiff maintains that the ALJ should have found that he meets Listing 1.04A. However, rather than showing the listing was met, plaintiff's post-surgical medical records actually demonstrate that the Listing criteria were not met. (Adm. Rec. at 441, 443, 452, 487, 492, 541, 565). For example, plaintiff's physicians regularly observed normal neurological functioning, including in July 2014 (one month after his date of medical improvement), January 2015, July 2015, and September 2015. (*Id.* at 441, 443, 487, 492). On those occasions, plaintiff was alert and oriented and had a normal gait. (*Id.* at 441, 443). More specifically, rather than showing reduced motion of the spine, Ellis observed full flexion and only a slight decrease in extension of plaintiff's back in June 2014 and March 2016. (*Id.* at 452, 541).

Rather than meeting the requirement for motor loss, Ellis observed "[n]o atrophy" in June 2014. (*Id.* at 452). Also indicating that the requirement for motor loss was not met, Jarielle Adams, M.D., and Bryan Faulkner, M.D., observed that plaintiff had full range of motion in his extremities, no deformities, and no joint pain in July 2015 and June 2016. (*Id.* at 492, 565). Also negating the motor loss requirement, Lawson-Baker observed that plaintiff had no muscle weakness and a full range of motion in his extremities on June 29, 2016. (*Id.* at 595).

Rather than meeting the requirement for reflex loss, Ellis observed normal reflexes, full extension, and no atrophy on June 24, 2014, and March 11, 2016. (*Id.* at 452, 541). Thus, as the ALJ noted, although plaintiff had lumbar area stenosis, his post-surgical medical evidence shows that the requirements of Listing 1.04A were not met here. (*Id.* at 17-18, 441, 443, 452, 487, 492,

11

541, 595).

### 3. Whether substantial evidence supports the ALJ's conclusion that plaintiff experienced medical improvement.

In his decision, ALJ concluded that plaintiff had experienced medical improvement and was no longer disabled under the Act, confirming the prior administrative termination of plaintiff's disability status as of June 11, 2014. (*Id.* at 24, 99-100). The agency has the burden of identifying evidence of medical improvement in a termination case. *Griego v. Sullivan*, 940 F.2d 942, 943-44 (5th Cir. 1991). Here, the ALJ met the burden of showing that plaintiff had experienced medical improvement by relying on plaintiff's post-surgical evidence showing that his pre-surgical symptoms were no longer present. (*Id.* at 18, 99-100, 273, 305, 309, 311-12, 441, 443, 492, 508, 565).

Plaintiff contends that "[n]o explanation of that [medical improvement] date is given." However, reviewing the record reveals that the ALJ used the date from the original administrative notice, which was based on plaintiff's treatment reports for the immediately preceding months. (*Id.* at 18, 99-100). These records included Dr. Peter G. Liechty's March 2014 observation that plaintiff was "[g]rossly intact from a motorsensory standpoint," which shows that the "chronic bilateral lower lumbar and sacral radiculopathy" that had been limiting plaintiff's functioning at the time of the April 2011 CPD had been relieved by plaintiff's July 2013 spinal fusion surgery. (*Id.* at 92, 99-100, 285). Similarly, Lesser noted on May 6, 2014, that plaintiff had a normal gait and was neurologically normal with the exception of diminished knee reflexes. (*Id.* at 100, 305). As noted above, many other physicians who examined plaintiff found that he had a normal gait, no atrophy, and a full range of motion in his extremities. (*Id.* at 46, 441, 443, 492, 595). Based on this evidence, the agency's reviewing physician used June 2014 as the disability cessation date.

(*Id.* at 95-97, 100). Plaintiff's claim that the agency's disability cessation date of June 2014 was unexplained lacks merit because the agency's explanation and rationale appears in the record. (*Id.* at 95-97).

Plaintiff also argues that the ALJ failed to demonstrate that plaintiff had experienced medical improvement. However, the record clearly documents medical improvement: whereas the April 2011 CPD found that plaintiff's ability to stand and walk was limited to no more than two hours per eight-hour workday, Lawson-Baker observed no neurological issues on July 30, 2014, at which time plaintiff reported that he had been working outside and having no muscle pain. (*Id.* at 91, 311-12, 441). Liechty, who performed plaintiff's July 2013 surgery, observed in late 2013 and March 2014 that plaintiff was "[g]rossly intact from a motorsensory standpoint," similarly demonstrating improvement in his condition relative to the CPD. (*Id.* at 91, 275-85). Tellingly, whereas on June 3, 2013, Liechty reported that plaintiff had not responded well to treatment, including injections, on June 17, 2015, plaintiff reported that receiving an injection improved the pain in his legs and back so much that he swam and had been looking for "light duty" work. (*Id.* at 18, 273, 508). This evidence shows that the July 2013 surgery resulted in an improvement in plaintiff's physical functioning.

Lastly, the Court notes that Lawson-Baker reported in July 2016 that plaintiff's prescribed pain medications were effective and did not cause significant side effects. (*Id.* at 596). *See Epps v. Harris*, 624 F.2d 1267, 1270 (5th Cir. 1980) (holding that conditions controlled or controllable by treatment are not disabling). As noted above, "[p]ain that can reasonably be controlled with medication or treatment is not disabling." *Johnson*, 894 F.2d at 686. In sum, substantial evidence of record supports the ALJ's finding that plaintiff experienced medical improvement as of June

13

2014, and the Court finds that plaintiff has shown no error in this finding. (*Id.* at 273, 305, 309, 311-12, 441, 443, 492, 508, 565). Despite plaintiff's "chart" – which lists the impairments that caused ALJ Voisin to find him disabled and those impairments and procedures since that date (which allegedly demonstrate that his condition had worsened) – the Court notes that it may not try the issues de novo, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey*, 230 F.3d at 135; *Ripley*, 67 F.3d at 555; *Spellman*, 1 F.3d at 360. That there is some evidence to support plaintiff's arguments is of no moment as long as substantial evidence supports the ALJ's conclusions. And the Court finds that it does.

## VI. CONCLUSION

Accordingly,

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 17th day of August, 2018.

_____
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**